## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No.** 0:19cv62341

ELISABETH FRANKLIN,

    Plaintiff,

v.

HS3, LLC d/b/a Go-Yo Frozen Yogurt,

    Defendant.

_____/

## COMPLAINT

Plaintiff ELISABETH FRANKLIN ("Plaintiff") sues Defendant HS3, LLC d/b/a Go-Yo Frozen Yogurt ("Defendant") for violations of the Telephone Consumer Protection Act ("TCPA").

## JURISDICTION AND VENUE

1. Jurisdiction is proper under 28 U.S.C. § 1331, as Plaintiff alleges violations of a federal statute, namely, 47 U.S.C. § 227.

1. Venue in this District is proper because Plaintiff resides here, Defendant transacts business here, and the complained conduct of Defendant occurred here.

## PARTIES

2. Plaintiff is a natural person and is a resident of Broward County, Florida

3. Defendant is a Florida corporation, with a principal address of 1000 North Congress Avenue, Suite Number 120, Boynton Beach, Florida 33462.

4. Defendant directs, markets, and provides substantial business activities throughout the State of Florida.

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

## **THE TCPA**

5. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

6. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

7. The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

8. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

9. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

10. A defendant must demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

11. Further, the FCC has issued rulings and clarified that consumers are entitled to the same

PAGE | **2** of **9**

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

## FACTS

12.     Beginning on or about April of 2018, Defendant began sending marketing text messages to Plaintiff's cellular telephone number, ending in 2207 (the "2207 Number"), without Plaintiff's prior express consent. Below is a depiction of *one* of the text messages Defendant sent to Plaintiff:



13.     At no point in time did Plaintiff provide Defendant with Plaintiff's express written consent to be contacted by text message using an ATDS.

14.     Plaintiff is the sole user and/or subscriber of the 2207 Number.

15.     The number used by or on behalf of Defendant (831-777-4640) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages en masse, while deceiving recipients into believing that the message was personalized and sent from a telephone

number operated by an individual.

16. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

17. The impersonal and generic nature of Defendant's text messages, coupled with the fact that they were originated from a long-code, demonstrates that Defendant utilized an automatic telephone dialing system, *i.e.*, an ATDS, in transmitting the messages.

18. To send the text message, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

19. The Platform has the capacity to store telephone numbers.

20. The Platform has the capacity to generate sequential numbers.

21. The Platform has the capacity to dial numbers in sequential order.

22. The Platform has the capacity to dial numbers from a list of numbers.

23. The Platform has the capacity to dial numbers without human intervention,

24. The Platform has the capacity to schedule the time and date for future transmission of text messages.

25. To transmit the text messages at issue, the Platform automatically executed the following steps: [1] The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed; [2] The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets"

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

consisting of one telephone number and the message content; [3] Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers; and [4] Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

26. The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

27. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



28. Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted approximately 30 minutes reviewing all of Defendant's unwanted messages. Each time, Plaintiff had to stop what she (Plaintiff) was doing to look down at her (Plaintiff's) phone to review the message.

29. Plaintiff was at home when she received some of the complained of messages, which resulted in an audible sound and the disturbance of the domestic peace of Plaintiff's home.

30. Plaintiff estimates that he wasted approximately 10 minutes researching Defendant and

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

the source of Defendant's messages, attempting to determine how Defendant obtained Plaintiff's telephone number. During this process, Plaintiff was upset and confused as to how Defendant had obtained his telephone number.

31. Subsequently, Plaintiff wasted approximately 5 minutes on the National Do Not Call Registry website to determine whether his number was registered.

32. Next, Plaintiff wasted approximately 60 minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages.

33. Plaintiff also wasted time responding "STOP," several times, to the complained of messages so that she would no longer receive messages from Defendant. After Plaintiff replied "STOP," Plaintiff received another message confirming that she would no longer be contacted; however, Plaintiff *still* kept receiving marketing text messages from Defendant.

34. Below is a depiction of *one* of the instances where Plaintiff told Defendant to "STOP" and, despite conformation from Defendant that Defendant *would stop*, Defendant proceeded to send Plaintiff text messages:



35. In all, Defendant's violations of the TCPA caused Plaintiff to waste at least 100 minutes of her time in addressing and attempting to stop Defendant's solicitations. This time was spent while

Plaintiff was at home and could have been pursuing other personal activities.

36. Defendant's text messages to Plaintiff caused the depletion of Plaintiff's cellular telephone battery. The battery used to power Plaintiff's cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff's cellular telephone.

37. Defendant's text messages took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes. The cumulative effect of unsolicited text messages, such as those complained of by Plaintiff herein, poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

## COUNT I
## VIOLATIONS OF 47 U.S.C. § 227(b)

38. Plaintiff re-alleges and incorporates paragraphs 1-36 as if fully set forth herein.

39. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii). "A text message to a cellular telephone qualifies as a 'call' within the meaning of the TCPA." Thomas v. Peterson's Harley Davidson of Miami, L.L.C., 363 F. Supp. 3d 1368, 1371 (S.D. Fla. 2018).

40. The TCPA defines an "automatic telephone dialing system" (ATDS) as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

41. Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such

PAGE | **7** of 9

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephone of Plaintiff. These calls, or more precisely, *text messages*, were sent without regard to whether Defendant had first obtained express permission from Plaintiff to send such text message.

42. In fact, Defendant did not have prior express consent to text the cell phones of Plaintiff when such text messages were sent.

43. Despite Plaintiff repeatedly replying "STOP" to the complained by text messages, as well as Defendant's purported conformation that it *would* stop, Defendant never stopped. Since approximately April-2018, Plaintiff has received nearly ninety (90) text messages from Defendant, all without Plaintiff's consent, whereby the majority of Defendant's text messages came subsequent to Plaintiff repeatedly telling Defendant to STOP.

44. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phone of Plaintiff.

45. **WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant that provides the following relief:

   (A) Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

   (B) A permanent injunction prohibiting Defendant from violating the TCPA in the future through calling or texting cell phones using an automatic telephone dialing system;

   (C) A declaration that Defendant used an automatic telephone dialing system and violated the TCPA in using such to call or text the cell phone of Plaintiff;

   (D) Any other relief the Court finds just and proper.

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

DATED: September 19, 2019

                                                    Respectfully Submitted,

   /s/ Jibrael S. Hindi
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail:    jibrael@jibraellaw.com
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377
E-mail:    tom@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone:    954-907-1136
Fax:    855-529-9540

*COUNSEL FOR PLAINTIFF*